1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10
GOOSE RIDGE, LLC and GOOSE
RIDGE VINEYARDS, LLC,

CASE NO. C24-1058 MJP

11

ORDER DENYING DEFENDANT'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT
Plaintiffs,

12

v.

13

THE OHIO CASUALTY
INSURANCE COMPANY,
14

15
Defendant.

16

17          This matter comes before the Court on Defendant's Motion for Partial Summary

18   Judgment. (Dkt. No. 20.) Having reviewed the Motion, Plaintiffs' Response (Dkt. No. 26), the

19   Reply (Dkt. No. 37), and all supporting materials, the Court DENIES the Motion. The Court

20   finds this matter suitable for decision without oral argument.

21                                      **BACKGROUND**

22          In addition to growing grapes and producing their own wines, Plaintiffs Goose Ridge

23   LLC and Goose Ridge Vineyards LLC (together "Goose Ridge") contract with other wineries to

24

grow grapes, vinify, and bottle wine for them. (First Amended Complaint (FAC) ¶ 5.1 (Dkt. No.

12).) K Vintners is one such winery. It contracted with Goose Ridge to produce, among other

things, K Vintners' "Substance" Cabernet Sauvignon. (Id. ¶¶ 5.2-5.3.) After several years of

successful contracted winemaking, K Vintners found the 2020 vintage of Substance Cabernet

Sauvignon was defective and unsaleable, and it blamed Goose Ridge for faulty vinification. In

the arbitration proceedings K Vintners commenced, Goose Ridge disputed the allegations and

identified competing causes of the defects in the wine. Ultimately the two wineries reached a

settlement. As is relevant here, Goose Ridge's primary commercial general insurer defended it in

the arbitration and indemnified it for a portion of the settlement. But Defendant The Ohio

Casualty Insurance Company, Goose Ridge's excess commercial general liability carrier, refused

to provide indemnification and contribute to the settlement. Goose Ridge now brings breach of

contract and extracontractual claims against Ohio Casualty, seeking indemnification and

damages.

     To unpack Ohio Casualty's present Motion for Partial Summary Judgment, the Court

reviews the disputed facts concerning Goose Ridge's work for K Vintners, Goose Ridge's

insurance coverage, and the procedural posture of this matter.

**A.**     **Goose Ridge's Contract Wine Production**

     Through a "Custom Winemaking Agreement" entered into between Goose Ridge and K

Vintners in 2017, Goose Ridge agreed to produce wine from grapes delivered by K Vintners for

various wines K Vintners would ultimately label and sell under its own name. (See Amended

Arbitration Demand ¶¶ 14-16 (Dkt. No. 21-4) ("Demand").) Under the Winemaking Agreement,

Goose Ridge was required "to accept, handle, and crush the grapes to produce wine; to produce

and then store the wine at Goose Ridge's facility; and to provide related services such as

1  bottling." (Id. ¶ 14.) The Winemaking Agreement made Goose Ridge "liable for any damage or

2  loss resulting from its intentional misconduct, negligence, or breach of the [Winemaking]

3  Agreement while the wine is in its possession" and it included an arbitration provision. (Id. ¶¶

4  17-18.) K Vintners also contracted to purchase grapes from Goose Ridge from various vineyard

5  blocks. (Demand ¶ 6.) Through an agreement separate from the Winemaking Agreement, Goose

6  Ridge agreed to an exclusivity clause, which forbid any other entity or person (including Goose

7  Ridge) from harvesting grapes within designated vineyard blocks selected by K Vintners. (Id. ¶¶

8  24-25.) The grape purchase agreement also required Goose Ridge to deliver any yields above the

9  contract amount to K Vintners and not retain any grapes for itself. (Id. ¶ 25.)

10     In February 2023, K Vintners determined that the 2020 vintage of Substance Cabernet

11  Sauvignon it received from Goose Ridge in July 2022 was defective due to high levels of volatile

12  acidity (VA) and lower levels of sulfur dioxide (SO2), both of which made the wine susceptible

13  to spoilage and unmarketable. (Demand ¶¶ 27-47.) Having a high VA "marks [a] wine's

14  inexorable march towards vinegar," rendering it unfit for sale. (Goose Ridge's Pre-Hearing Brief

15  at 13 (Dkt. No. 30 at 31).) K Vintners blamed Goose Ridge's vinification process, claiming that

16  it allowed oxygen into the fermentation process which ruined the wine. (Demand ¶¶ 47-54.) K

17  Vintners pulled the entire 2020 vintage of Substance Cabernet Sauvignon from the market after a

18  few cases had been sold, resulting in a loss of 320,922 cases. (Id. ¶ 55.) K Vintners alleged that

19  the wine was "not of the quality of premium wine or representative of the quality consumers

20  expect from K Vintners" and that releasing it would have "killed" the brand. (Id.)

21     K Vintners filed an arbitration demand under the Winemaking Agreement, seeking over

22  $50 million in damages. (FAC ¶ 5.5.) "K Vintners also alleged that Goose Ridge 'over-cropped'

23  grapes belonging to K Vintners by failing to adequately prune and thin the crop, and later picked

24

1    the grapes that remained on the vine for its own purposes without compensating K Vintners."

2    (FAC ¶ 5.3.) The latter acts were a claimed violation of the grape purchase contracts, while the

3    former were a claimed violation of the Winemaking Agreement.

4          In the lead up to the arbitration, Goose Ridge and K Vintners presented divergent

5    opinions as to what caused the wine to spoil. K Vintners' arbitration demand claimed that

6    "[b]etween November 2021 and July 2022, the wine was exclusively in the hands of Goose

7    Ridge who was responsible to harvest and crush the grapes, store the wine in metal refrigerated

8    and temperature-controlled tanks for the fermentation stage, then transfer the wine to oak barrels

9    for aging, then transfer the wine back into tanks for the final blending of the wine prior to

10   bottling." (Demand ¶ 46.) K Vintners alleged that Goose Ridge improperly exposed the wine to

11   oxygen during the fermentation process, which it claims ruined the wine. (Id. ¶¶ 47-54.)

12   Although there are references to Goose Ridge being responsible to harvest the grapes at issue, K

13   Vintners conceded that the grapes were harvested in September 2020, before Goose Ridge had

14   exclusive control over the wine. (Demand ¶ 46.) And K Vintners did not allege that Goose Ridge

15   was to blame for growing or harvesting the grapes used in the 2020 vintage of Substance.

16         Goose Ridge's winemaking expert, Timothy Donahue, provided his opinion and

17   concluded that Goose Ridge was not to blame for the damaged wine. He concluded that the

18   grapes Goose Ridge was required to use suffered from damage caused by smoke, frost, and

19   extreme heat. (Declaration of Timothy Donahue ¶¶ 5-6, 9 (Dkt. No. 29).) He also concluded that

20   K Vintner's requirement that Goose Ridge use an agglomerated bottle closure allowed oxygen to

21   enter the bottled wine. (Id. ¶¶ 9-11.) Donahue believes that the grapes' exposure to smoke, frost,

22   and extreme heat affected the VA levels of the wine, while the closure system caused the $SO_2$

23   levels in the wine to drop. (Id. ¶¶ 11-12.)

24

ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

Two days before the arbitration was to commence, K Vintners and Goose Ridge settled the dispute. (FAC ¶ 5.5; Dkt. No. 34 at 84-90.) The settlement agreement contains no findings of fact and Goose Ridge made no admissions of fault.

**B.    Goose Ridge's Insurance and Coverage for the Arbitration**

Goose Ridge has several layers of insurance that are relevant to the claims K Vintners made against it. Goose Ridge purchased primary and umbrella commercial general liability insurance from Eagle West Insurance Company. (FAC ¶¶ 4.2-4.3.) Goose Ridge also purchased excess liability coverage from Ohio Casualty, which provided $10 million in per-occurrence CGL coverage. (FAC ¶ 4.4.)

Eagle West initially denied Goose Ridge's tender of defense in the arbitration. But it reversed its coverage decision and agreed to both defend and indemnify Goose Ridge under the primary and umbrella CGL policies. (FAC ¶¶ 6.1-6.4.) Ohio Casualty refused to indemnify Goose Ridge, notwithstanding the fact its policy is a "form-follow" policy containing the same material terms of coverage and exclusions as the Eagle West policy. The only material difference between the policies is that Ohio Casualty provided no defense coverage—only indemnification coverage. (See Dkt. No. 21-1 at 19; Mot. at 6.)

Ohio Casualty refused to provide indemnification on the theory that the loss from the 2020 Substance Cabernet Sauvignon fits within the following policy exclusions: (1) for any "'property damage' to 'your product' arising out of it or any part of it" (Declaration of Jared Kiess, Ex. B at 20 (Dkt. No. 21)); (2) for damage to property owned or controlled by the insured (id. at 13-15); and (3) for damage to "any property [real or personal] that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it" (id.). And as to the overcropping claims that K Vintners included in its arbitration demand, Ohio Casualty asserted

1    that the loss fell within an exclusion for damage to real property on which the insured is

2    performing ongoing operations. (Id.)

3    **C.    This Lawsuit and the Present Motion**

4        Goose Ridge filed this lawsuit, claiming that Ohio Casualty wrongly denied

5    indemnification under the CGL policy. (FAC.) It pursues the following claims: (1) breach of

6    contract; (2) negligence; (3) bad faith; (4) Washington Consumer Protection Act violations; and

7    (5) Washington Insurance Fair Conduct Act violations. (Id. ¶¶ 9.1-13.4.) Goose Ridge also seeks

8    a declaratory judgment that it is owed coverage under the Ohio Casualty policy.

9        Goose Ridge has now moved for partial summary judgment, seeking a determination that

10    it owes no duty to indemnify Goose Ridge for any portion of the settlement.

**ANALYSIS**

11    **A.    Legal Standard**

12    

13        Summary judgment is proper "if the movant shows that there is no genuine dispute as to

14    any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

15    56(a). In determining whether an issue of fact exists, the Court must view all evidence in the

16    light most favorable to the nonmoving party and draw all reasonable inferences in that party's

17    favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of

18    material fact exists where there is sufficient evidence for a reasonable factfinder to find for the

19    nonmoving party. Id. at 248. The moving party bears the initial burden of showing that there is

20    no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v.

21    Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party

22    then must show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. If the

23    

24

1    nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving

2    party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323-24.

3    **B.    The Duty to Indemnify**

4        Under Washington law, the duty to indemnify "hinges on the insured's actual liability to

5    the claimant and actual coverage under the policy." Hayden v. Mut. of Enumclaw Ins. Co., 141

6    Wn.2d 55, 64 (2000). "The duty to indemnify generally arises when the plaintiff in the

7    underlying action prevails on facts that fall within the policy's coverage." Equilon Enters. LLC

8    v. Great Am. All. Ins. Co., 132 Wn. App. 430, 440 (2006). And liability obligations are routinely

9    established by settlement. See Thomas V. Harris, Wash. Ins. Law § 18.03 at 18-5 (3d Ed. 2010).

10   Where underlying claims are settled, the insured "need only prove the underlying claims were

11   covered by the policies," not necessarily proved. See Pub. Util. Dist. No. 1 of Klickitat Cty. v.

12   Int'l Ins. Co., 124 Wn.2d 789, 809 (1994). "[I]n an action to collect insurance proceeds after a

13   settlement, payment is proper as long as the claim is shown to be within the scope of policy

14   coverage." Id.

15       In determining whether an insured owes a duty to indemnify for a settlement, the Court

16   considers the settlement agreement and any undisputed facts underlying the settlement. See In re

17   Feature Realty Litig., 468 F. Supp. 2d 1287, 1295–96 (E.D. Wash. 2006) ("[W]here the claims

18   have been settled, the insurer's obligation to pay and the determination of coverage must be

19   based upon the facts inherent in the settlement and, because this is a summary judgment

20   proceeding, the undisputed facts."); Sentry Select Ins. Co. v. Alaska Nat'l Ins. Co., No. C01-

21   1956RSM, 2005 WL 8165075, *4 (W.D. Wash. Jan. 13, 2005) ("It is well settled that '[w]here

22   an action settles prior to trial . . . the duty to indemnify must be determined on the basis of the

23

24

1  settlement, i.e., the undisputed facts set forth in the underlying complaint and those known to the

2  parties.'").

3      Because Ohio Casualty seeks to avoid coverage based on various exclusions, the Court

4  also reviews Washington law on the construction of policy exclusions. Under Washington law,

5  "exclusions from coverage of insurance are contrary to the fundamental protective purpose of

6  insurance and will not be extended beyond their clear and unequivocal meaning." Stuart v. Am.

7  States Ins. Co., 134 Wn.2d 814, 818-19 (1998). Exclusions must be "strictly construed against

8  the insurer." Id. If the loss is otherwise covered, the "court must then determine whether an

9  exclusion clearly and unambiguously applies to bar coverage." Hayden, 141 Wn.2d at 64

10  (citation omitted). "Policy ambiguities, particularly with respect to exclusions, are to be strictly

11  construed against the insurer." Id. (citation omitted).

12  **C.    "Your Work" Exclusion Does Not Apply**

13      Ohio Casualty argues that it owes no coverage for the settlement because the "the [2020

14  Substance] wine was plainly Goose Ridge's 'product,'" and therefore "the 'your product'

15  exclusion applies to preclude coverage for K Vintners claims." (Mot. at 16.) There are flaws with

16  this argument, which the Court examines after reviewing at the nature of the exclusion and its

17  operation.

18      **1.    Scope of the Exclusion**

19      Ohio Casualty's "your product" exclusion excludes coverage for "'Property damage' to

20  'your product' arising out of it or any part of it." (Kiess Decl. Ex. B at 16.) As is relevant, the

21  term "your product" is defined as "goods or property, other than real property, manufactured,

22  sold, handled, distributed or disposed of by . . . you [and] containers (other than vehicles),

23  materials, parts or equipment furnished in connection with such goods or products." (Id. at 21.)

24

1  And "property damage" is defined to mean: "(a) physical injury to tangible property, including

2  all resulting loss of use of that property; or (b) loss of use of tangible property that is not

3  physically injured." (Id. at 20.)

4        Of note, the exclusion's "arising out of" language imports a causation standard that is

5  different from and less exacting than proximate causation. "The phrase 'arising out of' is

6  unambiguous and has a broader meaning than 'caused by' or 'resulted from.'" Toll Bridge Auth.

7  v. Aetna Ins. Co., 54 Wn. App. 400, 404 (1989). Instead, the phrase "is ordinarily understood to

8  mean 'originating from,' 'having its origin in', 'growing out of', or 'flowing from'." Id. at 404

9  (citation omitted). "[W]hen an exclusion uses the phrase 'arising out of,' the joint causation rule

10  is inapplicable." Krempl v. Unigard Sec. Ins. Co., 69 Wn. App. 703, 706 (1993). Joint causation

11  is also referred to as "efficient proximate cause . . . 'where a peril specifically insured against

12  sets other causes into motion which, in an unbroken sequence, produce the result for which

13  recovery is sought, the loss is covered, even though other events within the chain of causation are

14  excluded from coverage.'" Id. at 705(quoting McDonald v. State Farm Fire & Cas. Co., 119

15  Wn.2d 724, 731 (1992)). But a cause may not "arise out of" one's product if its "entirely

16  disconnected" from the product—in other words, the cause is "distinct and different" from the

17  product itself. Id. at 708.

18        To help define the contours of this rule, the Court reviews the two principal cases Ohio

19  Casualty invokes. In Toll Bridge, a driver onboard a ferry ignored worker commands to wait, and

20  instead drove her car over a parking block, striking four foot passengers who were unloading

21  ahead of her. Id., 54 Wn. App. at 401. The ferry's policy excluded any loss arising out of the

22  operation, maintenance, use, loading or unloading of any watercraft. Id. at 403. The court held

23  that "[b]ecause the accident occurred during unloading of the ferry," the exclusion applied even

24

1    if the driver's action proximately caused the injuries. Id. at 405. In Krempl, the owner of a car

2    removed a temporary gas cannister that had caught fire under the hood of his car, and he severely

3    burned a passenger in the process of throwing the cannister away from the car. Id., 69 Wn. App.

4    at 704. The owner sought coverage under his homeowners policy, but the insurer denied

5    coverage based on an exclusion for "bodily injury or property damage . . . arising out of . . . the

6    ownership, maintenance, use, loading or unloading of motor vehicles . . . owned or operated by .

7    . . an insured." Id. at 705. The Court of Appeals affirmed the denial of coverage, finding that the

8    act of throwing a gas can away from a burning car arose from the use of the car, and was

9    therefore excluded. Id. at 705-09.

10         **2.    Dispute of Fact as to Exclusion**

11         There remains a dispute of fact as to what caused the high VA and low SO2 in the 2020

12    Substance Cabernet Sauvignon such that the Court cannot conclude that the loss arose out of the

13    winemaking process and not some distinct source. Relying heavily on K Vintner's arbitration

14    demand, Ohio Casualty argues that Goose Ridge's own negligence allowed oxygen into the

15    fermentation process, causing the high VA and low SO2 levels. If true, the damage to the wine

16    occurred during the creation of the product and it falls within the exclusion because the damage

17    arises out of the product itself. But Goose Ridge points to evidence developed in the arbitration

18    identifying several sources distinct from the winemaking services it contractually provided that

19    could have caused the damage to the wine. Goose Ridge's expert, Tim Donahue, asserts that the

20    grapes that K Vintners delivered to Goose Ridge suffered from smoke, excessive heat, and frost

21    damage, which was entirely uncontrolled by and distinct from Goose Ridge's winemaking

22    process. He also asserts that K Vintner's demand that Goose Ridge use of an agglomerated

23    closure system allowed oxygen into the wine and that this, too, was a distinct cause of the low

24

SO2 levels. These alleged causes of the harm to the 2020 vintage are distinct from the wine, as the Winemaking Agreement required Goose Ridge to accept the grapes K Vintners delivered and to use the closure system K Vintners specified.

Given that the Court must construe the facts in Goose Ridge's favor at this juncture, it finds that Goose Ridge has identified two potential causes that are entirely distinct from the wine it produced, making the exclusion inapplicable. The two sources are: (1) the defective grapes that K Vintners delivered; and (2) the closure system that K Vintners demanded Goose Ridge use. While the grapes and closure are integral to the bottled wine, they themselves were outside of the scope of the Winemaking Agreement and outside of the product over which Goose Ridge had control or responsibility. If the grapes themselves caused the defect, then that defect did not arise out of the winemaking process. Similarly, if the harm arose out of the closure that K Vintners required, the defect did not arise out of the product. At this juncture, the Court cannot conclude as a matter of law that the loss arose out of the winemaking process and the product that Goose Ridge created. The facts here are also distinct from both Toll Bridge and Krempl, where there was no dispute of fact as to what caused the injury, and there was only a dispute as to whether the cause of the injury fell within the exclusion. Here, because there remains a dispute of fact as to causation, the Court cannot make any determination as to the applicability of this exclusion.

This case presents some parallel to Travelers Prop. Cas. Co. of Am. v. N. Am. Terrazzo Inc., No. C19-1175 MJP, Dkt. No. 127 (W.D. Wash. Nov. 13, 2020). In that case, the Court found a dispute of fact as to what caused an epoxy floor to fail, such that the Court could not conclude as a matter of law whether an exclusion for "your work" or "your product" applied to bar coverage. The Court noted that while some of the claimed causes of loss were from the epoxy work, there were two factors external to the floor that could have caused the loss, which

1  made application of a "your product" or "your work" exclusion impossible to resolve at

2  summary judgment. <u>Id.</u> at 3-5, 10-12. This same logic applies to the present dispute given the

3  disputes of fact on the source of the defects. Ohio Casualty attempts to distinguish <u>N. Am.</u>

4  <u>Terrazzo</u> and a similar case, arguing that "unlike the potential fire or water damage in <u>Terrazzo</u>

5  or the shipping damages in <u>Rad Source</u>, the effects of any smoke or frost on the grapes were

6  inherent in the wine from the moment they were incorporated into it." (Reply at 5-6.) But like the

7  fire and water damage to the epoxy floor in <u>Terrazzo</u>, the smoke, frost, and heat damage to the

8  grapes and the agglomerated closure system were not inherent in the wine and they originated

9  from sources outside of Goose Ridge's control given the limits of the Winemaking Agreement.

10 The Court is therefore unconvinced by Ohio Casualty's efforts to distinguish <u>N. Am. Terrazzo</u>.

11      The Court DENIES Ohio Casualty's Motion as to this exclusion, finding a dispute of fact

12 precludes the requested relief.

13 **D.    Exclusion for Wine in Goose Ridge's Care, Custody, and Control Inapplicable**

14      Ohio Casualty argues that it does not owe indemnification coverage because the policy

15 excludes coverage for "'[p]roperty damage' to . . . personal property in your care, custody, or

16 control." (Kiess Decl. Ex. B at 15.) The Court finds a dispute of fact precludes summary

17 judgment on this exclusion.

18      As the Ninth Circuit has explained, this exclusion applies only if the "property damage"

19 in fact occurred while the "personal property" was "in [the insured's] care, custody, or control."

20 <u>Dewitt Constr. v. Charter Oak Fire Ins. Co.</u>, 307 F.3d 1127, 1135 (9th Cir. 2002). Thus, the

21 relevant question here is whether the damage occurred while the wine was in Goose Ridge's

22 care, custody, or control.

23

24

1    As explained above, there remains a dispute of fact as to when the damage to the wine

2    occurred. According to Goose Ridge, the grapes themselves were damaged before it took receipt

3    and began making the wine. Goose Ridge's lack of control over the grapes is consistent with K

4    Vintner's Arbitration Demand, which stated that Goose Ridge only had exclusive possession of

5    the wine after delivery of the grapes in November 2021, well after the September 2020 harvest of

6    the grapes. (Demand ¶ 46.) And to the extent that the damage to the wine occurred after delivery

7    due to the closure system, then there are many months after delivery when K Vintners, and not

8    Goose Ridge, had possession of the wine when the damage could have occurred. (See

9    Declaration of Brendan Monahan Ex. B at 20 (noting delivery of the 320,000 cases by June

10   2022).) This is consistent with Donahue's conclusion that the closure system allowed oxidation

11   to occur and lower the SO2 levels. (Donahue Decl. ¶¶ 8, 11-12.) Given the factual record before

12   it, the Court cannot conclude as a matter of law that the damage here occurred when the wine

13   was in Goose Ridge's care, custody, or control. For these reasons, the Court DENIES the Motion

14   as to this exclusion.

15       The Court also notes that Ohio Casualty misplaces reliance on Cashmere Pioneer

16   Growers, Inc. v. Unigard Sec. Ins. Co., 77 Wn. App. 436 (1995). In that case, the insured had

17   contracted to provide controlled atmosphere storage for apples, and it was undisputed that the

18   apples were damaged while in the insured's storage facility. Id. at 439. The insured tried to avoid

19   the same policy exclusion that Ohio Casualty invokes here on the theory that it was the insured's

20   employee who acted negligently, not the insured. The Court of Appeals rejected that theory and

21   found that the insured owed a contractual obligation to care for the apples regardless of the acts

22   of its employees. Id. at 440. This case does not apply to the facts alleged here because the Parties

23   dispute whether the harm occurred while the wine was in Goose Ridge's care, custody, or

24

control. Goose Ridge does not attempt to blame an employee—instead, it identifies sources of

harm that predate its work or that were outside of its control. This case is therefore inapposite.

**E.      Ongoing Operations Exclusion Does Not Apply**

Ohio Casualty argues in its Motion that K Vintners' claim that Goose Ridge overcropped

certain vineyards remains subject to an "ongoing operations" exclusion. But as Ohio Casualty

concedes in its reply, this exclusion does not apply. For the sake of completeness, the Court the

reviews the issue briefly.

As is relevant, the Ohio policy excludes:

(l) "Property damage" to:

> (5) that particular part of real property on which you or any contractors or
> subcontractors working directly or indirectly on your behalf are performing
> operations, if the "property damage" arises out of those operations;

(Dkt. 21-2 at 15; Dkt. 21-3 at 182.)

As Goose Ridge correctly notes, "Washington courts have held that the reference to 'real

property' applies only to 'land,' and does not unambiguously apply to crops grown on the land."

(Opp. at 22 (quoting <u>Nationwide Mut. Ins. Co. v. Hayles, Inc.</u>, 136 Wn. App. 531, 540-41

(2007)).) Ohio Casualty concedes that this exclusions "does not apply to any claims asserted

against Goose Ridge for damage to the grapes that were still on the vine." (<u>Id.</u>; <u>see</u> Reply at 6-7.)

As such, the Parties agree this exclusion has no application. This also means that the only

possible exclusions Ohio Casualty has identified relate solely to the winemaking process, not K

Vintners' concerns related to overcropping which fell outside of the Winemaking Agreement.

**F.      Products-Completed Exclusion**

In its last argument, Ohio Casualty claims that it owes no duty to indemnify because the

policy excludes losses to property that must be restored, repaired, or replaced due to Goose

Ridge's faulty work. This argument lacks merit on the record before the Court.

1    Ohio Casualty invokes an exclusion for "'Property damage' to . . . that particular part of

2    any property that must be restored, repaired, or replaced because 'your work' was incorrectly

3    performed on it." (Dkt. 21-2 at 15-16; Dkt. 21-3 at 182.) As Goose Ridge points out, "this

4    exclusion does not apply to "property damage" included in the "products completed operations

5    hazard.'" (Id.) The relevant policy defines "products completed operations hazard" to "include[]

6    all 'bodily injury' and 'property damage' occurring away from premises you own or rent and

7    arising out of 'your product' or 'your work' except: (1) products that are still in your physical

8    possession; or (2) work that has not yet been completed or abandoned." (Id. at 20.)

9    Goose Ridge correctly points out that this exclusion cannot be found to apply because the

10    Parties dispute whether Goose Ridge incorrectly performed any work. Given the opposing views

11    on whether Goose Ridge did or did not cause damage to the wine during the winemaking

12    process, the Court cannot determine whether Goose Ridge's "work" caused the defect. Similarly,

13    because there is a dispute of fact as to when the flaw in the wine may have occurred, the

14    "products completed operations hazard" clause could well apply to foreclose application of the

15    exclusion that Ohio Casualty invokes. Goose Ridge also correctly argues that there is no

16    evidence that the wine itself could have been restored or replaced even if Goose Ridge was at

17    fault. Ohio Casualty has not explained how Goose Ridge could have replaced or fixed the wine,

18    particularly since it was a unique wine from a specific vintage and set of grapes selected by K

19    Vintners. And the cases Ohio Casualty relies on all concern construction flaws, which is work

20    that can be replaced and reperformed, and which falls far afield of a unique vintage of wine.

21    The Court DENIES the Motion as to this exclusion.

22

23

24

1

**CONCLUSION**

2          Of the three exclusions that could potentially apply, Goose Ridge has demonstrated

3   disputes of material fact that preclude summary judgment in Ohio Casualty's favor. Ohio

4   Casualty has failed to demonstrate any entitlement to summary judgment in its favor. The Court

5   therefore DENIES the Motion.

6          The clerk is ordered to provide copies of this order to all counsel.

7          Dated May 19, 2025.

8

9          Marsha J. Pechman
           United States Senior District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 16